## THE TITAN.
## LEGG et al. v. THE TITAN et al.

(Circuit Court of Appeals, Second Circuit. February 23, 1897.)

COLLISION—TUGS AND TOWS.

A steamer, with tows lashed to her side, and a tug aiding her on a hawser ahead, after passing up the eastern side of Blackwell's Island, with a flood tide of about five miles an hour, turned to cross the head of the island, to make a landing at Eighty-Sixth street, New York. In so doing, they attempted to cross the bows of a small tug, with two heavy tows, which was coming up the west side of the island, and which failed to hear their first signal. A collision resulted, causing the loss of a tow. *Held*, that the first-mentioned steamer and tug were guilty of contributory fault, in failing to observe that the other tug would be unable to check her tows sufficiently in the strong tide to pass behind them, and in not keeping further away and allowing a wider margin of safety.

Appeal from the District Court of the United States for the Southern District of New York.

Goodrich, Deady & Goodrich, for appellants.

James J. Macklin and Louis B. Adams, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is an appeal by the owners of the steam vessels the Titan and the Thomas Hunt from a decree condemning them, together with the steam tug Unit, for the loss of the schooner Isle of Pines and her cargo in consequence of a collision between the schooner and a barge in tow of the Titan and the Hunt. The owner of the Unit has not appealed, and the sole question, therefore, is whether there was contributory fault on the part of the appellants' vessels in causing the collision. The collision took place in the East river in the forenoon of June 19, 1893, in the westerly channel, near the upper end of Blackwell's Island, and opposite Eighty-Sixth street, New York City.

The steam tug Unit, having in tow the schooner Isle of Pines, lashed on her starboard side, and the schooner Ella Frances, lashed on her port side, was proceeding up the westerly channel of the river, between New York City and Blackwell's Island, on a flood tide of about 6 miles an hour, making a speed in addition of about 2 miles an hour. The steamboat Thomas Hunt, with the steam tug Titan ahead, attached to the Hunt by a hawser about 30 fathoms long, the Thomas Hunt having two barges in tow,—the Vanderbilt, lashed on her starboard side, and the Warren, lashed on her port side,—each projecting about 25 feet beyond her stem, were proceeding up the easterly channel of the river, intending to land at Eighty-Sixth street, on the westerly side of the East river. The Hunt, with her fleet, was making a speed of about 10 miles an hour with the tide, which was running in that channel at about 5 miles. Shortly before reaching the upper end of the island the Hunt discovered across the island the Unit and her tow; the latter at the time being nearer the Blackwell's Island shore than the New York shore, nearly opposite Eighty-Fifth street, and not far behind the Hunt. Before turning to cross the head of the island, the Titan

had blown a long whistle, indicating her intention to land at Eighty-Sixth street, but this was not heard by the Unit. After she had turned to cross the river to her landing, and while the Hunt was rounding the head of the island, the Titan blew another whistle to the Unit, indicating her intention to cross the river in front of the Unit. The Unit immediately answered the signal with a single blast of her whistle, and followed this very quickly with alarm whistles, and reversed her engine. The Titan cast off the hawser of the Hunt, and the Hunt reversed her engines; but the bow of the Isle of Pines came in collision with the bow of the Vanderbilt, causing the Isle of Pines to sink. When the alarm signals were given, the Titan was making directly across the river, and had passed or was passing in front of the Unit, and the Unit had headed somewhat to the easterly in the attempt to pass astern of the Hunt.

We are satisfied, upon a careful reading of the proofs, that, when the Titan rounded the head of the island to cross the river, she did not make sufficient allowance for the inability of the Unit to control her tows in the strong tide and reduce her speed sufficiently to pass between the Hunt and the head of the island, and that this was due to the failure of the pilot of the Titan to vigilantly observe the Unit. The Unit was an old and small tug, and both of her tows were deep-laden with cargo, and her power was insufficient to hold her tows against the strong flood tide. If the pilot of the Titan had carefully observed her when he began to shape the course of his vessel to cross her bows, he would have discovered that, incumbered as she was, she could not check her speed efficiently and quickly change her course, and that unless she could she would be unable, within the time required, to pass astern of the Hunt without risk of collision. There was plenty of room for the Titan to allow a larger margin of safety for the maneuver. If the Titan had kept further away in the direction of Mill Rock, as she might have done, all hazard would have been avoided. This would have been more inconvenient for the Titan, but it was obviously the more prudent course. The answering signal from the Unit, given as it was when the risk of collision was so obvious that it was immediately followed by her alarm whistles, had no appreciable effect upon the conduct of the Titan or the Hunt. We agree with the district judge that the attempt by the Titan and the Hunt to cross the bow of the Unit was dangerous and unjustifiable, in the circumstances of the situation.

The decree is affirmed, with interest and costs.